(158 App. Div. 505.)

### LEIH–UND–SPARKASSA AADORF v. PFIZER.

(Supreme Court, Appellate Division, First Department. October 24, 1913.)

1. CORPORATIONS (§ 432*)—BILLS AND NOTES (§ 525*)—AUTHORITY—VALIDITY —SUFFICIENCY OF EVIDENCE.

   In an action upon a note executed by a corporation, indorsed by two of its directors and given to the president in payment for the assignment of certain patents to the corporation, evidence *held* sufficient to show that there was a valuable consideration for the note, that the president had authority to negotiate it, and that the plaintiff acquired the note from him in due course for value.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. § 432;* Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. § 525.*]

2. CORPORATIONS (§ 465*)—CONTRACTS WITH OFFICERS—PROMISSORY NOTE.

   Where a note was given by a corporation in payment for patents assigned to it by its president, the mere fact that the payee was the president does not affect the validity of the note, especially in the hands of an indorsee who did not know that he was the president of the corporation.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1822–1826; Dec. Dig. § 465.*]

3. BILLS AND NOTES (§ 354*)—BONA FIDE PURCHASERS—AMOUNT OF PAYMENT.

   The fact that an indorsee of a note took it at one-half of its face value, or that the transfer took place in a foreign country, does not indicate that the transaction was not in good faith.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 354.*]

4. BILLS AND NOTES (§ 360*)—BONA FIDE PURCHASERS—CONSIDERATION—RENEWAL NOTE—RELEASE OF INDORSER.

   Where the holder of a note, which had been given by a corporation to its president after being indorsed by two of its directors, accepted a renewal of the note in the same form but indorsed by only one of the di-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rectors, thereby releasing the other, who was a responsible indorser, the holder was a holder for value of the renewal note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 793; Dec. Dig. § 360.*]

Appeal from Trial Term, New York County.

Action by Leih-und-Sparkassa Aadorf against Charles Pfizer, Jr. Judgment for the defendant, and plaintiff appeals. Reversed, and judgment directed for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles E. Thorn, of New York City, for appellant.
George C. Lay, of New York City, for respondent.

McLAUGHLIN, J.   Action upon a promissory note for $15,706, made by the International Exploitation Company, payable to the order of its president, indorsed by the defendant, and discounted or purchased by the plaintiff. Payment was resisted upon the ground that the note was fraudulently diverted by the payee, was an ultra vires act of the maker, and that the plaintiff took it in bad faith, with full knowledge of its invalidity. The question of the invalidity of the note and the plaintiff's bad faith were submitted to the jury, which found in favor of the defendant. From the judgment entered upon the verdict and an order denying a motion for a new trial, plaintiff appeals.

[1] Prior to September 6, 1905, one Paul Ruf-Martin owned or controlled certain letters patent which he was desirous of exploiting in the United States. To that end he and certain other persons on that day formed a corporation under the laws of the state of New Jersey, known as the International Exploitation Company, with an authorized capital of $300,000. Ruf-Martin was elected president, Pfizer, the defendant, vice president, one Schwanhausser, treasurer and secretary; and they, together with one Imandt, constituted the entire board of directors. On the day following the formation of the corporation it entered into a written agreement with Ruf-Martin by which he transferred to it the letters patents referred to in consideration of $100,000, $50,000 of which was paid in cash and the balance agreed to be paid by the delivery to him of certificates representing $50,000 of the capital stock of the corporation, provided the patents, in the discretion of the board of directors, proved to be "good and marketable." This agreement, while purporting to have been executed on the 7th of September, 1905, was not acknowledged until the 12th of that month. A certificate for 500 shares of the capital stock of the corporation was made out in the name of Ruf-Martin, and, while he signed a receipt for it, it appears it was never actually delivered to him but that the same or a part thereof was taken and used by the defendant. When the agreement referred to was executed, or shortly thereafter, it was modified so that Ruf-Martin, instead of receiving the $50,000 in stock, received two notes of the corporation, one for $20,000, negotiable in form and indorsed in blank by the defendant and

Schwanhausser, and the other for $30,000 being nonnegotiable and unindorsed.

The testimony on the part of the plaintiff tended to establish that Ruf-Martin, being in need of cash, requested the two notes instead of the 500 shares of stock, with the understanding, however, that he could receive the stock upon the return of the notes. The defendant denied there was any agreement by which the contract was modified and contended that the notes were given to Ruf-Martin for the sole purpose of securing him against maladministration of the affairs of the corporation during his absence abroad and under an agreement on his part not to negotiate them. Defendant's claim in this respect is not sustained either by the form of the note sued on, the resolution of the corporation passed by the board of directors at the time the same was executed and delivered, or the other evidence bearing upon that transaction. All of the circumstances tend to corroborate plaintiff's claim that the consideration for the $20,000 note was the transfer of the patents in lieu of that amount of stock which was to be delivered to him if the note were not returned.

That it was expected Ruf-Martin would negotiate the note is clearly evidenced by the resolution passed at the time the note was delivered, which, among other things, specifically provided that in case the corporation did not pay the same at maturity, or at the time to which payment might be deferred, and by reason of that fact the indorsers had to pay, then and in that event they should be reimbursed out of the funds of the company, and the amount paid by them should be a first lien thereon. It was further evidenced by resolution of the board of directors passed on the 26th of March, 1906, wherein it was stated that the corporation issued the note "with the express understanding that the said Ruf-Martin was to take it up and pay it at maturity."

Shortly after Ruf-Martin received the note he procured it to be discounted by the plaintiff, a savings bank located in Switzerland, and received therefor approximately $10,000. The state of the record is such that it is difficult to determine whether he sold the note to the bank or it loaned the money to him, taking the note as security. Substantially the only evidence as to the circumstances under which the note was negotiated by Ruf-Martin is the deposition of the manager of the plaintiff, who testified that he accepted the note and advanced the money thereon and that he was not aware, at the time he did so, of any defect in it; that he did not remember when he first learned that Ruf-Martin was president of the corporation which made the note. There is absolutely no evidence to show bad faith on the part of the plaintiff, nor is any claimed except that Ruf-Martin, at the time the note was made, was president of the corporation; that only $10,000 was advanced upon it; and that such advance was made in a foreign country.

[2] But Ruf-Martin did not execute the note. The fact that he was president of the corporation did not prevent it from discharging its obligation to him by paying for the patents in cash, stock, or a promissory note. If a corporation owes its president, it is bound to pay him just as much as it is any other person.

[3] The fact that the plaintiff took the note for $10,000 is of no more importance than that the transaction took place in a foreign country. If Ruf-Martin had a right to negotiate the note, then the plaintiff had a right to take it upon the best terms obtainable, and that is no concern of the defendant. No matter what may be said upon the subject, the evidence clearly establishes that there was sufficient consideration for the note; that Ruf-Martin had a right to negotiate it; and that plaintiff acquired it in due course, for value.

[4] When the note matured it was presented for payment, payment refused, and an action thereupon brought in the Supreme Court of this state against defendant, but at his request the same was discontinued and a renewal note given, payable three months from date, executed and indorsed as was the original. Besides giving the renewal note, the defendant paid the plaintiff's attorney in the action $827, for which a receipt was taken which recited that the second note was given in consideration of the discontinuance of the action brought in the Supreme Court. When the note fell due, it was renewed, Schwanhausser refused to indorse a renewal note, and thereupon defendant paid $5,000, and the plaintiff accepted, without Schwanhausser's indorsement, the note in suit, no part of which has been paid. When the plaintiff accepted this note, without the indorsement of Schwanhausser, a responsible indorser on the preceding notes, and thereby released him, this, so far as the defendant was concerned, constituted the plaintiff a holder of the note for value. Phœnix Ins. Co. v. Church, 81 N. Y. 218, 37 Am. Rep. 494. The note, in form, is an absolute promise for a valuable consideration to pay a given sum of money at a specified time. There is nothing upon its face to indicate that Ruf-Martin had any connection with the corporation or with the note other than that he was the payee therein named. There is not the slightest evidence to indicate that the plaintiff, when it took the note, knew or had any reason to believe that Ruf-Martin was the president of the maker, and, had it possessed that knowledge, the situation would not have been different. There was sufficient consideration passing to the corporation. The note was executed and delivered for the purpose of being negotiated, which is clearly established by the resolution directing its execution and providing that if it were not paid by the corporation at maturity, and by reason of that fact the indorsers had to pay it, then they should have a first lien upon the assets of the company to that extent. The defendant voted for the resolution; and, when the first note matured and an action was brought upon it, he procured its discontinuance by indorsing a renewal note; and, when the note in suit fell due, he induced the defendant to release a good indorser by paying $5,000 and inducing plaintiff to accept a renewal note for the balance.

Under such circumstances, I think the plaintiff's motion for the direction of a verdict should have been granted and the exception to its denial was well taken. Under section 1317 of the Code of Civil Procedure this court has the power to do what should have been done by the trial court.

The judgment and order appealed from, therefore, is reversed, with costs, and judgment directed in favor of the plaintiff against the defendant for the amount of the note sued on, with interest.   All concur.

